ORAL ARGUMENT NOT YET SCHEDULED

**No. 22-1318**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

MICHAEL MUIR,

*Petitioner*,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY AND
TRANSPORTATION SECURITY ADMINISTRATION,

*Respondents*.

---

ON PETITION FOR REVIEW OF A FINAL ORDER OF THE UNITED
STATES TRANSPORTATION SECURITY ADMINISTRATION

---

**PRINCIPAL BRIEF OF COURT-APPOINTED
*AMICUS CURIAE***

---

WILLIAM R. WEAVER
*Lead Counsel*
HALEY B. TUCHMAN
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
202-639-6000
wweaver@jenner.com
htuchman@jenner.com

*Counsel for Amicus Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A. *Parties and Amici.*

The current parties in this case are Petitioner Michael Muir, Respondent United States Transportation Security Administration ("TSA"), court-appointed Amicus curiae, William R. Weaver, of Jenner & Block LLP. Respondent United Department of Homeland Security ("DHS") has since been dismissed, and a joint motion to intervene filed by L3Harris Technologies, Inc. and Leidos, Inc was dismissed as moot.

B. *Ruling Under Review.*

49 C.F.R. § 1540.107(d), and TSA's Checkpoint Screening Standard Operating Procedures.

C. *Related Cases.*

The case on review was not previously before this court or any other court, nor are there any related cases currently pending in this court or in any other court of which Amicus is aware.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF AUTHORITIES .....................................................................iv

GLOSSARY.................................................................................... vii

INTRODUCTION ...............................................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF THE ISSUES.............................................................3

STATUTES AND REGULATIONS........................................................3

STATEMENT OF THE CASE................................................................3

STANDARD OF REVIEW ...................................................................6

SUMMARY OF ARGUMENT ..............................................................6

STANDING .......................................................................................7

ARGUMENT .....................................................................................9

I.      Mr. Muir's Petition Satisfies the Requirements of 49 U.S.C.
        § 46110(d).............................................................................9

II.     TSA's Screening Procedures Adopted in the Final Rule Are
        Arbitrary and Capricious. ............................................................11

        A.      Review of the SOP Is Inescapably Intertwined with Mr.
                Muir's Claims.................................................................13

        B.      TSA Failed to Respond to Comments Highlighting that Pat
                Downs Could Aggravate Medical Issues and Cause Severe
                Pain. ..............................................................................15

        C.      TSA's Current Lack of Alternative Screening Methods for
                Travelers with Disabilities Is Arbitrary and Capricious. ....................20

III.    TSA's Failure to Accommodate Mr. Muir's Disability Violates the Rehabilitation Act and DHS Regulations Implementing the Rehabilitation Act. .......................................................................................23

CONCLUSION .......................................................................................27

# TABLE OF AUTHORITIES[*]

## CASES

*Abdelfattah v. United States DHS*, 787 F.3d 524 (D.C. Cir. 2015) ........................14

*Alexander v. Choate*, 469 U.S. 287 (1985) ..............................................................26

*American Council of the Blind v. Paulson*, 525 F.3d 1256 (D.C. Cir. 2008) ......................................................................................................24, 26

*American Forest & Paper Association v. United States EPA*, 137 F.3d 291 (5th Cir. 1998) ................................................................................10

*Armstrong v. FAA*, 515 F.3d 1294 (D.C. Cir. 2008) .................................................11

*Bonacci v. TSA*, 909 F.3d 1155 (D.C. Cir. 2018) .......................................................2

*Carus Chemical Co. v. United States EPA*, 395 F.3d 434 (D.C. Cir. 2005) ...........................................................................................................18–19

*Cellnet Communications, Inc. v. FCC*, 965 F.2d 1106 (D.C. Cir. 1992) .................9

*City of Olmsted Falls v. FAA*, 292 F.3d 261 (D.C. Cir. 2002) ................................10

*Cronin v. FAA*, 73 F.3d 1126 (D.C. Cir. 1996) .........................................................9

*Durso v. Napolitano*, 795 F. Supp. 2d 63 (D.D.C. 2011) ..........................13, 14, 20

*Flytenow, Inc. v. FAA*, 808 F.3d 882 (D.C. Cir. 2015)............................................10

*Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630 (D.C. Cir. 2017) .........................12

*Genuine Parts Co. v. EPA*, 890 F.3d 304 (D.C. Cir. 2018)....................................12

*Haynes v. Williams*, 392 F.3d 478 (D.C. Cir. 2004)................................................24

*Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983).................15

*Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019) ...............................................12

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

iv

*New Jersey v. EPA*, 989 F.3d 1038 (D.C. Cir. 2021) ...............................................8

*Northeast Maryland Waste Disposal Authority v. EPA*, 358 F.3d 936 (D.C. Cir. 2004) .........................................................................9

*Perez v. Mortgage Bankers Association*, 575 U.S. 92 (2015) ...............................15

*Ramsingh v. TSA*, 40 F.4th 625 (D.C. Cir. 2022) ...............................................6

*Redfern v. Napolitano*, 2011 WL 1750445 (D. Mass. May 9, 2011), *vacated as moot*, 727 F.3d 77 (1st Cir. 2013).....................................13

*Sierra Club v. EPA*, 863 F.3d 834 (D.C. Cir. 2016) ...............................................19

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).........................................7

*United States v. Nova Scotia Food Products Corp.*, 568 F.2d 240 (2d Cir. 1977) .........................................................................19

*Vaughn v. FAA*, 756 F. App'x 8 (D.C. Cir. 2018) ...............................................9

*Wallaesa v. FAA*, 824 F.3d 1071 (D.C. Cir. 2016)...............................................14

STATUTES

5 U.S.C. § 706(2)(A).........................................................................6, 11–12

*29 U.S.C. § 794(a) .........................................................................23, 24

42 U.S.C. § 12102(1)(C).........................................................................25

42 U.S.C. § 12102(3).........................................................................25

49 U.S.C. § 114(d) .........................................................................2

49 U.S.C. § 114(e).........................................................................24

49 U.S.C. § 44901.........................................................................2

49 U.S.C. § 44901(*l*).........................................................................20

49 U.S.C. § 46110(a) .........................................................................2, 6

49 U.S.C. § 46110(c) .........................................................................6

49 U.S.C. § 46110(d) ...........................................................................9, 11

**OTHER AUTHORITIES**

6 C.F.R. § 15.1 ...................................................................................23

*6 C.F.R. § 15.30(b)(4)(i) ...............................................................23, 26

*49 C.F.R. § 1540.107(d) ............................................................2, 4, 12

*Passenger Screening Using Advanced Imaging Technology, 81 Fed.
Reg. 11364 (Mar. 3, 2016)................................................. 13, 15, 18, 19, 20, 22

TSA, *Disabilities and Medical Conditions*, https://www.
tsa.gov/travel/tsa-cares/disabilities-and-medical-conditions     (last
accessed Sept. 6, 2024) ...........................................................16

TSA, *Disabilities and Medical Conditions: Service Animals*,
https://www.tsa.gov/travel/tsa-cares/disabilities-and-medical-con
ditions (last accessed Sept. 6, 2024) ...............................................21

TSA, *Small Pets*, https://www.tsa.gov/travel/security-screening/
whatcanibring/items/small-pets (last accessed Sept. 6, 2024)..........................21

TSA, *Technology*, https://www.tsa.gov/news/press/fact
sheets/technology (last updated May 28, 2021) ...........................................8, 21

TSA, *Traveling with Children*, https://www.tsa.gov/travel/tsa-
cares/traveling-children (last accessed Sept. 6, 2024)........................................21

TSA, *TSA at a Glance*, https://www.tsa.gov/news/press/factsheets/tsa-
glance (last updated July 27, 2022) ...................................................21

TSA, *TSA PreCheck FAQ*, https://www.tsa.gov/precheck/faq  (last
accessed Sept. 6, 2024) ...............................................................20–21

## GLOSSARY

| | |
|---|---|
| AIT | Advanced Imaging Technology |
| APA | Administrative Procedure Act |
| DHS | United Department of Homeland Security |
| NPRM | TSA's Notice of Proposed Rulemaking |
| SOP | TSA's Checkpoint Screening Standard Operating Procedures |
| TSA | Transportation Security Administration |
| WTMD | Walk Through Metal Detectors |

## INTRODUCTION

Petitioner Michael Muir challenges a regulation and procedures issued by the Transportation Security Administration (TSA) that prevent him from engaging in commercial air travel without facing the significant risk of immense pain due to a life-threatening medical condition. For all of his adult life, Mr. Muir has suffered from an intestinal hernia in his groin area that interferes with his ability to take part in typical daily activities. Mr. Muir experiences severe symptoms daily, and the most severe and consequential symptoms occur during periodic flare-ups that can happen at a moment's notice. Under those circumstances, any physical contact with his hernia is excruciatingly painful and requires immediate medical care.

TSA's Advanced Imaging Technology (AIT) incorrectly registers Mr. Muir's hernia as a threat object requiring a pat down from TSA personnel. The same is true for other travelers with internal disabilities like his. Mr. Muir faces severe pain when AIT flags his hernia as a threat object and he is subjected to a pat down—pain so severe that it has prevented him from engaging in commercial air travel in order to avoid it. Although multiple comments submitted during the notice-and-comment period flagged this issue and proposed alternatives to AIT, this issue persists because TSA failed to adequately address it in its Final Rule and standard operating procedures implementing the Rule.

1

Placing this burden on Mr. Muir and others who suffer similar disabilities is unjustifiable because TSA has alternative screening options that it uses in other circumstances. Despite allowing exemptions for numerous other groups of travelers to opt-out of AIT screening, TSA's regulation and standard operating procedures, 49 C.F.R. § 1540.107(d) (Final Rule or Rule), do not provide exemptions for passengers with internal medical conditions like Mr. Muir's. TSA has not articulated *any* reason why its Final Rule and standard operating procedures do not afford exemptions for travelers with internal medical conditions similar to Mr. Muir's, let alone a reason sufficient to withstand scrutiny under the arbitrary and capricious standard. The result of TSA's failure is that the Final Rule and standard operating procedures also violate the Rehabilitation Act because they discriminate against travelers with invisible disabilities.

## JURISDICTIONAL STATEMENT

The agency had subject matter jurisdiction pursuant to 49 U.S.C. §§ 114(d), 44901. This Court has jurisdiction pursuant to 49 U.S.C. § 46110(a) because Petitioner challenges a final order issued by the TSA. Petitioner filed his challenge on December 14, 2022.[1] TSA's Checkpoint Screening Standard Operating

---

[1] Section 46110(a)'s 60-day filing provision "is not jurisdictional." *Bonacci v. TSA*, 909 F.3d 1155, 1160 (D.C. Cir. 2018) (citing *Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 519 (D.C. Cir. 2011)).

Procedures (SOP) have been designated Sensitive Security Information, and accordingly have not been publicly disclosed.

## STATEMENT OF THE ISSUES

1.  Whether a Petition for Review satisfies 49 U.S.C. § 46110(d) when other parties raised the issue before the agency during the notice and comment period.

2.  Whether TSA's Final Rule and SOP are arbitrary and capricious because they fail to provide an alternative screening process for travelers with internal disabilities without adequate justification, and do not afford travelers proper notice of anomalies that the AIT would register as a threat.

3.  Whether TSA discriminated against Petitioner within the meaning of the Rehabilitation Act by subjecting him to painful pat down screenings.

## STATUTES AND REGULATIONS

The statutes at issue in this case are 49 U.S.C. § 46110, 5 U.S.C. § 706, and 29 U.S.C. § 794(a). The regulations are 49 C.F.R. § 1540.107(d) and 6 C.F.R. § 15.30(b)(4)(i).

## STATEMENT OF THE CASE

Petitioner Michael Muir is a 43-year-old man who has long suffered from an intestinal hernia in his groin area that "unpredictably and uncontrollably manifests serious and periodically life-threatening symptoms." J.A.109 (Declaration of Michael Muir (Muir Decl.) ¶ 2); J.A.33 (Petition for Review at 2). Mr. Muir's

disability has consistently prevented him from meaningfully participating in major life activities, impairing his ability to care for himself, eat, stand, and work. J.A.109-110 (Muir Decl. ¶¶ 2, 6). Over the past ten years, Mr. Muir has suffered from multiple "potentially life-threatening incidents" and other "serious medical emergencies" due to "incarceration or partial strangulation of [his] intestine." J.A.110 (*Id.* ¶¶ 4–5). Mr. Muir experiences daily symptoms that are often severe. J.A.110 (*Id.* ¶ 3). According to Mr. Muir, multiple of those life-threatening incidents were aggravated by TSA screening procedures that algorithmically misidentified his medical condition as a threat object requiring a dangerous pat down. J.A.110 (*Id.* ¶ 5).

On December 1, 2022, Mr. Muir arrived at St. Pete-Clearwater International Airport for a flight. J.A.111 (*Id.* ¶ 7). While standing in line for security, he noticed that his "right groin hernia was not reducible." J.A.111 (*Id.* ¶ 8). Mr. Muir did not complete the security process and was not able to get on his flight because he reasonably believed he would be subjected to a painful and "potentially life threatening pat-down" as a result of an AIT anomaly flag. J.A.112 (*Id.* ¶ 12). Mr. Muir fears that he will be subjected to tremendous pain if he attempts to engage in commercial air travel in the future.

TSA regulations provide for the agency's use of AIT during pre-flight screening and inspection, *see* 49 C.F.R. § 1540.107(d), and the procedures for using

AIT scanners during TSA screening are implemented by the agency's Checkpoint Screening Standard Operating Procedure. The SOP outlines the "specific procedures" that TSA employees must abide by when "screening passengers for prohibited items." J.A.98 (Declaration of Joseph Sebastian (Sebastian Decl. ¶ 9). Although TSA employs AIT during pre-flight screening for many travelers, the Agency also uses other procedures in place of AIT for certain individuals and at some U.S. commercial airports that are not yet equipped with AIT. *See infra* 20–21.

But the problem with the agency's use of AIT—both for Mr. Muir and for many other travelers with internal physical disabilities—is twofold.

First, AIT screening cannot categorically exclude below the skin physical disabilities from classification as threat objects requiring a subsequent pat down. *See, e.g.*, J.A.111 (Muir Decl. ¶ 10); J.A.145 (TSA-2013-0004-0163); J.A.176-177 (TSA-2013-0004-5424). And for passengers with internal physical disabilities like Mr. Muir's, receiving a pat down can be extremely painful, and in some cases, even life-threatening. For that reason, when Mr. Muir travels, he faces the abundant risk that he will be "forced to submit to a potentially life-threatening pat-down at [his] right groin due solely to the serious symptom manifestation of [his] hidden physical disability." J.A.112 (Muir Decl. ¶ 12).

Despite offering accommodations for other passengers, such as those traveling with children or pets, that forgo the use of AIT screening in favor of Walk

Through Metal Detectors (WTMD), and using alternative procedures in airports throughout the country where AIT is not available, TSA has failed to explain why it cannot simply extend those same accommodations and alternative procedures to passengers with internal physical disabilities. Not only is TSA's refusal to justify unduly harming persons with internal medical disabilities arbitrary and capricious, it is also unlawfully discriminatory. As TSA routinely uses WTMDs in place of AIT for other passengers, there appears to be no logical barrier to adopting alternative procedures designed to respond to the needs of travelers with internal physical disabilities.

## STANDARD OF REVIEW

This Court reviews TSA's orders to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); 49 U.S.C. § 46110(a); *see also Ramsingh v. TSA*, 40 F.4th 625, 631 (D.C. Cir. 2022). If it so finds, the Court may "affirm, amend, modify, or set aside" the order and order TSA "to conduct further proceedings." 49 U.S.C. § 46110(c).

## SUMMARY OF ARGUMENT

TSA's Final Rule adopting AIT as the primary screening procedure for passengers with internal disabilities like Mr. Muir's and its SOP implementing those screening procedures are arbitrary and capricious. Despite receiving numerous comments that its screening procedures would disproportionately harm travelers

6

with internal disabilities and suggesting less objectionable alternative procedures, TSA did not provide an alternative screening process for these individuals. TSA did not (and cannot) articulate a sufficient justification for failing to do so, as TSA currently allows alternate screening methods for certain other groups and does not utilize AIT screening at certain airports, which rely instead on WTMDs or other security protocols. For similar reasons, TSA has discriminated against Mr. Muir within the meaning of the Rehabilitation Act by subjecting him to invasive and painful pat downs simply because TSA's AIT systems erroneously categorize his medical condition as a threat. The government cannot show that accommodating Mr. Muir would be an undue burden given the number of non-AIT screening accommodations it currently affords to other travelers.

On either basis, this Court should remand the Rule and the SOP to the agency and instruct TSA to reconsider whether to include an alternative security mechanism that would allow passengers with internal physical disabilities to be screened by WTMDs.

## STANDING

Mr. Muir has standing to challenge TSA's screening procedures involving the use of AIT scanners because they create a "substantial risk" that he will be subjected to tremendous pain if he attempts to go through the security screening process, a prerequisite to engage in commercial air travel in the United States. *See Susan B.*

*Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Standing is established when a Petitioner demonstrates "both (i) a substantially increased risk of harm and (ii) a substantial probability of harm with that increase taken into account." *New Jersey v. EPA*, 989 F.3d 1038, 1047 (D.C. Cir. 2021) (emphasis omitted).

TSA's screening procedures substantially increase the risk that Mr. Muir will be forced to endure tremendous pain when he travels. As of 2021, more than three-quarters of airports throughout the country use the challenged AIT systems pursuant to TSA's screening procedures.[2] When individuals with hernia conditions like Mr. Muir's experience a flare while passing through an AIT scanner, the system misidentifies the internal medical condition as a prohibited item. J.A.111 (Muir Decl. ¶ 10) (explaining AIT scanners "algorithmically misidentif[y]" Petitioner's "beneath-the-skin hernia as a threat object requiring a pat-down to resolve"). When that occurs, TSA procedures *require* a pat down of the area. J.A.99 (Sebastian Decl. ¶ 11) ("[A]fter a possible prohibited item is detected, a TSA screening employee *must conduct a pat down* of the passenger in the area of the box." (emphasis added)).

The likelihood of a false alarm and the severity of Mr. Muir's hernia condition substantially increase his risk of harm when he undergoes pat down screening. At best, those pat downs are extremely painful for Mr. Muir, and at worst, they can be

---

[2] *See* TSA, *Technology*, https://www.tsa.gov/news/press/factsheets/technology (last updated May 28, 2021).

"life-threatening." J.A.112 (Muir Decl. ¶ 12). As the Government attests, screening employees "must conduct" pat downs when AIT detects a threat object, J.A.99 (Sebastian Decl. ¶ 11), and despite offering accommodations for other passengers that do not rely on standard AIT and pat down procedures, TSA makes no mention of similar accommodations for individuals suffering from hernia conditions like Mr. Muir's. *See infra* 20–21. Thus, Mr. Muir faces a substantial risk that TSA's screening procedures will cause him to endure tremendous pain when he travels, and his injury would be redressed by a similar accommodation.

## ARGUMENT

## I.    Mr. Muir's Petition Satisfies the Requirements of 49 U.S.C. § 46110(d).

The Petition for Review satisfies the requirements of 49 U.S.C. § 46110(d) because, as discussed *infra* 16–17, "other parties raised the same objections" during the notice and comment period that Petitioner now raises. *Vaughn v. FAA*, 756 F. App'x 8, 11 (D.C. Cir. 2018); *see also Cronin v. FAA*, 73 F.3d 1126, 1133–34 (D.C. Cir. 1996) (assessing whether comments from other parties "establish[ed] that [the petitioner's] specific objections were sufficiently raised before the agency").[3]

---

[3] In analogous challenges to orders issued under the Clean Air Act and the Federal Communications Act, this Court has interpreted jurisdictional requirements (that issues had previously been raised before the relevant agency) broadly. *See, e.g.*, *Ne. Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 948 n.12 (D.C. Cir. 2004) ("It is sufficient that an issue was raised by any commenter; the party petitioning for judicial review need not have done so itself."); *Cellnet Commc'ns, Inc. v. FCC*, 965

Although in limited circumstances courts have sometimes required the same objections to have been raised before the agency by the same party now before the Court, those circumstances do not extend to this case. Because "the public comments regarding the [rule] were sufficiently specific…the agency cannot reasonably claim that it has been denied the opportunity to consider the issue." *See Am. Forest & Paper Ass'n v. U.S. EPA*, 137 F.3d 291, 296 (5th Cir. 1998); *see also Flytenow, Inc. v. FAA*, 808 F.3d 882, 893 (D.C. Cir. 2015) ("[T]he policies that exhaustion is meant to protect" are not implicated when "[t]he [agency has not] missed any opportunity to apply its expertise or revise its rule to avoid [the petitioner's] objections").

*City of Olmsted Falls v. FAA*, 292 F.3d 261 (D.C. Cir. 2002), is distinguishable. That case concerned a city's failure to raise certain arguments during a notice and comment proceeding in which the city's lawyers submitted comments on behalf of the city but failed to raise the argument it later raised before the court. *See id.* at 266, 274. There was also no indication that another party raised the specific argument at issue in the petition for review when the matter had been before the agency. Moreover, the city was one of a handful of parties within a confined radius of the airport construction project that had notice of the agency proceedings.

---

F.2d 1106, 1109 (D.C. Cir. 1992) (jurisdiction proper where "comments by other parties raised the issue").

None of those circumstances are present here, and an extension of the Court's holding in *Olmsted* to Mr. Muir's case would mean that any citizen who wanted to challenge a generally applicable regulation issued by TSA (or another agency) under § 46110 would be required to make particular arguments before the agency during a notice-and-comment period without receiving any form of individualized notice. The result that would flow from such a reading of § 46110 is not supported by this Court's case law.

Alternatively, the Court may find that Mr. Muir had a "reasonable ground" for not raising these challenges during the notice and comment period. 49 U.S.C. § 46110(d).[4] As a pro se Petitioner living with a debilitating disability, Mr. Muir cannot reasonably be expected to monitor the Federal Register for notices of proposed rulemakings with the potential to affect him. Mr. Muir also could not have raised a challenge to TSA's SOP during notice and comment—those procedures implementing the Final Rule were not yet in existence, and they remain non-public.

## II.    TSA's Screening Procedures Adopted in the Final Rule Are Arbitrary and Capricious.

This Court should remand the Final Rule and TSA's SOP to the agency for additional consideration because the Rule's original adoption and subsequent implementation through the SOP are arbitrary and capricious. Under the APA, this

---

[4] Also, language in a case that post-dates *Olmsted* casts doubt on whether § 46110(d) is jurisdictional. *See Armstrong v. FAA*, 515 F.3d 1294, 1296 n.* (D.C. Cir. 2008).

Court must "hold unlawful and set aside agency action" that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "An agency's failure to consider and address during rulemaking 'an important aspect of the problem' renders its decision arbitrary and capricious." *Mozilla Corp. v. FCC*, 940 F.3d 1, 60 (D.C. Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In addition, the agency must "reflect upon the information contained in the record and grapple with contrary evidence." *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017). An agency "cannot ignore evidence that undercuts its judgment; and it may not minimize such evidence without adequate explanation." *Genuine Parts Co. v. EPA*, 890 F.3d 304, 346 (D.C. Cir. 2018) (citing *Morall v. DEA*, 412 F.3d 165, 179–80 (D.C. Cir. 2005)).

During the notice and comment period for 49 C.F.R. § 1540.107(d), TSA received multiple comments explaining that AIT screening would consistently identify certain medical disabilities as "threat objects" and require passengers to endure pat downs that could cause severe pain and at times aggravate their medical conditions. TSA ignored this evidence and adopted AIT as the primary screening procedure for these passengers without addressing that evidence—despite its operating procedures allowing alternate screening methods for certain other groups

12

and at certain airports. These actions are arbitrary and capricious and warrant remand to the agency.

### A. Review of the SOP Is Inescapably Intertwined with Mr. Muir's Claims.

The "inescapable-intertwinement doctrine gives the courts of appeals jurisdiction over not only direct challenges to final agency orders but also any claims inescapably intertwined with the review of those orders." *Durso v. Napolitano*, 795 F. Supp. 2d 63, 69 (D.D.C. 2011). The doctrine "applies only where a claim does not directly challenge the order in question" because when such a challenge is made, "intertwinement is a moot point." *Id.* at 69 n.4. Thus, in cases when a plaintiff's claims have challenged TSA's use of AIT but have "not challenge[d] the validity of the SOP directly," the validity of the SOP is implicitly before the court. *Redfern v. Napolitano*, Civ. A. No. 10-12048, 2011 WL 1750445, at *6 (D. Mass. May 9, 2011), *vacated as moot*, 727 F.3d 77 (1st Cir. 2013). Claims challenging "TSA's screening procedures involving the use of [] AIT scanners…[that] were implemented as a direct result of the SOP at issue…are inescapably intertwined with the SOP[.]" *Id.*

Likewise, here, the SOP is inescapably intertwined with Mr. Muir's claims, making this Court's review of the SOP part and parcel of resolving the case. The SOP is what implements the screening procedures that Mr. Muir's claims challenge. *See* Passenger Screening Using Advanced Imaging Technology, 81 Fed. Reg. 11364,

11386 (Mar. 3, 2016) ("TSA's SOPs are internal documents that contain instructions for TSOs on how to…conduct screening."). And SOP-focused relief is likely a proper remedy for claims related to airport screening that are inescapably intertwined with the SOP. *See Durso*, 795 F. Supp. 2d at 70 ("If plaintiffs prevailed before the court of appeals, the screening SOP would be modified or set aside[.]"). That notion is only strengthened by this Court's instruction that Mr. Muir's pro se petition must be construed liberally and be held to a less stringent standard. *Abdelfattah v. U.S. DHS*, 787 F.3d 524, 533 (D.C. Cir. 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Mr. Muir's claims cannot be so closely tied to the SOP as to strip a district court of its jurisdiction to hear them, yet also fail to sufficiently raise the content and application of the SOP as an issue before this Court. *See Durso*, 795 F. Supp. 2d at 72.

Whether the Court chooses to rely on the inescapable intertwinement doctrine or not, it should consider the SOP as part and parcel of Mr. Muir's challenge to the Final Rule because the unpublished SOP is what implements the screening procedures that he challenges, and the relief Mr. Muir seeks could be provided by the TSA implementing an accommodation for individuals with internal disabilities either through subsequent rulemaking or revising the SOP.[5]

---

[5] Also, "court-appointed amici enjoy relatively wide latitude to raise arguments not addressed on appeal by pro se parties." *Wallaesa v. FAA*, 824 F.3d 1071, 1077–78 (D.C. Cir. 2016).

**B. TSA Failed to Respond to Comments Highlighting that Pat Downs Could Aggravate Medical Issues and Cause Severe Pain.**

An agency's action is arbitrary and capricious if it has "entirely failed to consider an important aspect of the problem" it faces. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Thus, to comply with the APA, "[a]n agency must consider and respond to significant comments received during the period for public comment." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977); *Thompson v. Clark*, 741 F.2d 401, 408 (D.C. Cir. 1984)). Here, comments on TSA's Notice of Proposed Rulemaking (NPRM) raised that (1) passengers with internal physical disabilities are consistently singled out by the AIT procedure because AIT devices are not capable of correctly identifying below the skin physical disabilities to exclude them from the category of "threat object" that results in a pat down[6] and (2) for some of these passengers, the resulting pat down is extremely painful and potentially life-threatening.[7] In its only discussion of these comments, TSA simply directed passengers with medical disabilities to its phone hotline and the TSA "Special Procedures" webpage. 81 Fed. Reg. at 11387. Though TSA devoted significant discussion to medical devices and aids, TSA failed to discuss internal

---

[6] *See, e.g.*, J.A.145 (TSA-2013-0004-0163); J.A.176 (TSA-2013-0004-5424).
[7] *See, e.g.*, J.A.147 (TSA-2013-0004-2726).

physical disabilities at all. Even today, the TSA "Special Procedures" webpage contains guidance for 28 different special circumstances—but not a single one is addressed to internal physical disabilities.[8] Because TSA failed to consider or respond to any comments regarding the particular difficulties facing those who have internal physical disabilities, it failed to consider an important aspect of the problem during the rulemaking, and its Final Rule is arbitrary and capricious.

TSA received numerous comments noting that passengers with certain medical disabilities would be consistently subjected to pat downs because of their medical issues and that pat downs are particularly harmful for these passengers. *See, e.g.*, J.A.149 (TSA-2013-0004-3545) (noting that pat downs "have disproportionately negative impacts on people with certain medical conditions, disabilities, and sexual assault survivors"); J.A.160 (TSA-2013-0004-4958) (noting that the medically disabled would bear the brunt of "millions of secondary searches each year due to false positives and detecting 'concealed anomalies' which are NOT weapons, explosives, or incendiary devices"); J.A.153 (TSA-2013-0004-4432) (stating that "TSA's body scanners discriminate against the disabled, people with medical conditions, and others"). Not only are people with disabilities at heightened

---

[8] The section entitled "Non-Visible Disabilities & Medical Conditions" is directed towards accommodations for passengers with "medical conditions such as Alzheimer's, autism spectrum disorder, and dementia." TSA, *Disabilities and Medical Conditions*, https://www.tsa.gov/travel/tsa-cares/disabilities-and-medical-conditions (last accessed Sept. 6, 2024).

16

risk of "anomaly detection" requiring a pat down, pat downs present a heightened risk of injury to these passengers. As one commenter explained: "For those subject to easy bruising and blood clots, they risk Deep vein thrombosis… [which] can have serious complications such as a pulmonary embolism (possibly fatal)." J.A.147 (TSA-2013-0004-2726) (noting "others with fragile body parts fear injury"); *see also* J.A.151 (TSA-2013-0004-4233) (noting that the commenter is "a disabled person who experiences touch as pain"). Given these circumstances, one commenter directly requested that TSA "maintain body scanners but allow passengers to choose for themselves between scanners and walkthrough metal detectors." *See* Attachment to TSA-2013-0004-4662 (available at https://perma.cc/ES4Y-DF2W). In total, TSA received more than 80 comments mentioning this Rule's impact on people with disabilities or highlighting that the use of AIT would pose significant and unique challenges to those in the disability community.

Mr. Muir is one such individual; as he notes in his declaration, he has a "congenital birth defect" of a right-groin hernia that "unpredictably presents as a physical impairment." J.A.109 (Muir Decl. ¶ 2). His medical condition results in symptoms "every day" and has become life-threatening several times. J.A.110 (Muir Decl. ¶¶ 3–4). Solely because of his physical disability, Mr. Muir has been required to undergo extremely painful pat downs by TSA agents on multiple occasions. J.A.110 (Muir Decl. ¶ 5). TSA was on notice that passengers like Mr. Muir would

face these issues when going through passenger screening but failed to meaningfully respond in the Final Rule and the SOP implementing it.

Though TSA addressed medical issues generally during the rulemaking, *see* 81 Fed. Reg. at 11386–87, it did not respond to comments regarding or consider what procedures might be appropriate for passengers whose internal medical conditions would consistently alarm AIT machines and for whom pat-downs may cause life-threatening injuries. TSA stated that "TSOs are trained to inquire whether a passenger has an injury or tender area prior to initiating the pat-down" but also that "sufficient pressure must be applied in order to ensure detection" of prohibited items. 81 Fed. Reg. at 11385. Where the passenger's medical condition causes the AIT to detect an "anomaly," TSA's procedure requires the passenger to be patted down in the very area of sensitivity. This procedure necessarily puts the passenger at risk of severe pain or even serious injury.

Rather than provide an alternate procedure in these instances, TSA's response to these comments merely pointed passengers to its TSA Cares hotline and website, neither of which offer an alternative method of screening for passengers with internal physical disabilities. If TSA had responded to these comments and accommodated passengers with internal medical disabilities, Mr. Muir would not face the substantial risk of experiencing tremendous pain each time he flies. However, TSA failed to either do so or to "articulate[] a rational explanation" for its failure to do so. *Carus*

18

*Chem. Co. v. U.S. EPA*, 395 F.3d 434, 441 (D.C. Cir. 2005). As the D.C. Circuit has held repeatedly, agency decisions are arbitrary or capricious if the agency fails to address important comments submitted in the notice-and-comment period in its final rule. *Sierra Club v. EPA*, 863 F.3d 834, 838 (D.C. Cir. 2016); *see also United States v. Nova Scotia Food Prods. Corp.*, 568 F.2d 240, 252 (2d Cir. 1977) ("It is not in keeping with the rational process to leave vital questions, raised by comments which are of cogent materiality, completely unanswered."). Because TSA left the important issue of internal physical disabilities completely unanswered in the rulemaking, the Final Rule was arbitrary and capricious.

Further evidence that TSA was aware of this problem but ignored it is the agency's broader failure to respond to comments requesting that it define what an anomaly is or describe what an AIT threat trigger would be with more specificity. In its NPRM, TSA defined AIT as "screening technology used to detect concealed anomalies without requiring physical contact with the individual being screened." 81 Fed. Reg. at 11366. Commenters reasonably questioned what kinds of "anomalies" would trigger the AIT's threat detection and require a pat down. *See id.* (noting that "TSA received many comments stating that the definition was too broad" creating "confusion and uncertainty regarding the use of the word 'anomalies'"). TSA's response to these comments was to remove the word "anomalies" from the Final Rule and to adopt the definition of AIT in the FAA

19

Modernization and Reform Act of 2012. *Id.* The new definition contains no reference to what an "anomaly" is or any other description of what triggers the AIT to display a threat requiring a pat down.[9] There was no excuse for failing to provide individuals with disabilities clear bright lines that would allow them to weigh whether they'll be flagged as anomalous and face a heightened risk of being subjected to pain during TSA screening.

### C. TSA's Current Lack of Alternative Screening Methods for Travelers with Disabilities Is Arbitrary and Capricious.

TSA's continued lack of an alternative screening procedure for passengers with internal medical conditions, in line with the alternative procedures it offers to other passengers, is also arbitrary and capricious. TSA's Screening Checkpoint Standard Operating Procedure is an "order" within the meaning of § 46110 and reviewable under that provision. *See Durso*, 795 F. Supp. 2d at 69.

Though no alternative procedure is discussed for passengers with internal physical disabilities, TSA routinely uses alternative procedures for other passengers. TSA screens PreCheck passengers using the Walk-Through Metal Detector (WTMD) instead of AIT. TSA, *TSA PreCheck FAQ*, https://www.tsa.

---

[9] The FAA Modernization and Reform Act of 2012 defines AIT as "a device used in the screening of passengers that creates a visual image of an individual showing the surface of the skin and revealing other objects on the body; and may include devices using backscatter x-rays or millimeter waves and devices referred to as 'whole-body imaging technology' or 'body scanning machines.'" 49 U.S.C. § 44901(*l*).

gov/precheck/faq (last accessed Sept. 6, 2024). It does the same for passengers carrying an infant, child, or a small pet. TSA, *Traveling with Children*, https://www.tsa.gov/travel/tsa-cares/traveling-children (last accessed Sept. 6, 2024); TSA, *Small Pets*, https://www.tsa.gov/travel/security-screening/what canibring/items/small-pets (last accessed Sept. 6, 2024). Passengers with service animals "will be screened by the WTMD." TSA, *Disabilities and Medical Conditions: Service Animals*, https://www.tsa.gov/travel/tsa-cares/disabilities-and-medical-conditions (last accessed Sept. 6, 2024).

At airports that do not yet have AIT, TSA also uses WTMD as its primary screening method. In 2021, according to TSA, AIT was deployed at about 340 airports nationwide. *See* TSA, *Technology*, https://www.tsa.gov/news/press/factsheets/technology (last updated May 28, 2021). That leaves almost 100 airports supporting commercial air travel at which WTMDs are the *only* method of technology-enabled passenger screening. TSA, *TSA at a Glance Factsheet*, https://www.tsa.gov/news/press/factsheets/tsa-glance (last updated July 27, 2022) (noting that TSA screens passengers at nearly 440 airports nationwide). All told, TSA screens millions of passengers every year using WTMDs. It is clear from the SOP that the agency has determined that using WTMDs as the primary screening method in some cases is an alternate procedure that sufficiently protects airline security. Yet even though "[s]everal commenters expressed their general opposition

21

to the use of AIT for those with medical conditions" given that "AIT scanners discriminate against those with a physical disability or medical issue," *see* 81 Fed. Reg. at 11386, the Final Rule does not provide for passengers with such conditions to opt for WTMDs instead of AIT. This decision is arbitrary and capricious.

While Mr. Muir can use a WTMD without incident, AIT consistently identifies his medical disability as an "anomaly" requiring a pat down to resolve. His situation is not unique and was raised to TSA during the rulemaking process. In the rulemaking, TSA alluded to the potential for there to be an alternate procedure in these circumstances, stating that "[d]epending on the circumstance, changes in certain procedures may be necessary on a global or case-by-case basis to…accommodate individuals with disabilities or other unique needs." *Id.* at 11389. Despite contemplating this need, TSA has failed to provide an adequate alternative procedure for individuals with internal disabilities like Mr. Muir. Indeed, Mr. Muir's experience and the SOP show that TSA continues to unnecessarily subject passengers with internal medical conditions that alarm AIT to painful pat downs. TSA's stated justification for disallowing alternative screening and requiring a pat down when AIT detects an anomaly was that AITs and pat downs alone can detect metallic and non-metallic threats. *Id.* at 11388. However, this reasoning is undercut by the fact that TSA uses the combination of WTMDs and explosive trace detection swab tests in a quarter of its airports for children, travelers with pets, and travelers

with certain other disabilities. Given that TSA does have alternate procedures in place for certain passengers and at certain airports, it is arbitrary and capricious that the agency denied requests for alternative screening procedures for passengers with disabilities like Mr. Muir's without any justification.

Therefore, this Court should remand the SOP to TSA and direct the agency to consider allowing passengers with internal physical disabilities to be screened by WTMDs or provide an adequate justification for its failure to do so.

## III.    TSA's Failure to Accommodate Mr. Muir's Disability Violates the Rehabilitation Act and DHS Regulations Implementing the Rehabilitation Act.

Section 504(a) of the Rehabilitation Act provides that no otherwise qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" receiving federal funds. 29 U.S.C. § 794(a). In addition, Department of Homeland Security (DHS) regulations implement the Rehabilitation Act by providing that DHS, of which TSA is a part, "may not, directly or through contractual or other arrangements, utilize criteria or methods of administration the *purpose or effect* of which would subject qualified individuals with a disability to discrimination on the basis of disability." 6 C.F.R. § 15.30(b)(4)(i) (emphasis added); *id.* § 15.1 ("The provisions established by this part shall be effective for all components of the Department."). TSA's insistence on

subjecting Mr. Muir to an invasive and painful pat down procedure simply because its AIT systems erroneously categorize his medical condition as a threat violates the Rehabilitation Act and regulations implementing the Act.

To prove a violation of Section 504 of the Rehabilitation Act, one must establish that (1) they are disabled within the meaning of the Rehabilitation Act, (2) they are otherwise qualified, (3) they were excluded from, denied the benefit of, or subject to discrimination under a program or activity, and (4) the program or activity is carried out by a federal executive agency or with federal funds. *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008). The TSA screening program is undoubtedly a program carried out by a federal agency, *see* 49 U.S.C. § 114(e), and Mr. Muir has satisfied the remaining criteria.

First, Mr. Muir is disabled within the meaning of the Rehabilitation Act. Under the Act, an individual is considered disabled if "(1) he suffers from an impairment; (2) the impairment limits an activity that constitutes a major life activity under the Act; and (3) the limitation is substantial." *Haynes v. Williams*, 392 F.3d 478, 482 (D.C. Cir. 2004); 29 U.S.C. § 794(a) (incorporating the statutory definition from 42 U.S.C. § 12102(1)(A) via 29 U.S.C. § 705(20)(b)). Mr. Muir's impairment fits this description. His right scrotum and groin hernias limit his life activities and unpredictably and uncontrollably manifest serious and periodically life-threatening symptoms. *See* J.A.109-110 (Muir Decl. ¶¶ 2–6) (explaining that his disabilities limit

24

Mr. Muir's ability to "(1) care for [him]self, (2) perform manual tasks, (3) eat, (4) stand, (5) learn, (6) concentrate, or (7) work, as well as (8) digest food, (9) expel intestinal gas, (10), move [his] bowels, and (11) urinate")[10]

Second, Mr. Muir is otherwise eligible to travel.

And third, Mr. Muir is subject to discriminatory action during TSA screening because the "AIT in use at the Checkpoint, … algorithmically misidentifies [his] beneath-the-skin hernia as a threat object requiring a pat-down to resolve." J.A.111 (Muir Decl. ¶ 10). Put differently, Mr. Muir is forced to undergo painful pat down procedures for no other reason than his disability, i.e., he is "subject to discrimination under" the TSA screening program.

In fact, TSA's policy discriminates against travelers who have invisible disabilities like Mr. Muir, despite the agency's awareness that this was a problem. As noted in Part II, TSA received many warnings during notice and comment that AIT technology could misidentify bodily abnormalities as threat objects and that TSA's pat down procedures would aggravate existing medical conditions. Despite this awareness, TSA still chose to adopt its existing procedures—as applied to persons with invisible disabilities—without any public explanation. This refusal to

---

[10] And regardless of whether his "impairment substantially limits…a major life activit[y]," an individual is still considered disabled within the meaning of the Act so long as he "establishes that he…has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(1)(C), (3).

25

justify unduly harming persons with disabilities is not only arbitrary and capricious, as noted above, but is also discriminatory.

The discrimination endured by Mr. Muir need not be intentional for TSA to be liable. The Rehabilitation Act does not require proof of specific intent because discrimination against persons with disabilities "was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). This is reflected in regulations implementing the Rehabilitation Act; TSA is prohibited from "utiliz[ing] criteria or methods of administration" when the "*effect*" of those policies subjects individuals with disabilities to undue discrimination. 6 C.F.R. § 15.30(b)(4)(i) (emphasis added). Such is the case here. When Mr. Muir seeks to travel, he is forced to choose between an extremely painful pat down or not travelling at all. Therefore, the effect of TSA's policy is to burden those with invisible disabilities—in a manner different from and much greater than those without disabilities—by subjecting them to physical pain during mandatory pre-travel screening.

The Government cannot show that accommodating Mr. Muir would constitute an undue burden, as noted in Part II.C. *See Am. Council*, 525 F.3d at 1266 & n.12. TSA routinely uses alternative procedures for all kinds of passengers, including screening using WTMDs in place of AIT. The notion that travelers with infants and

service animals are eligible for those accommodations, but not those suffering severe internal disabilities, is thus discriminatory on its face with no adequate justification.

## CONCLUSION

For the foregoing reasons, Amicus Curiae respectfully requests that the Court remand TSA's Final Rule and Checkpoint Screening Standard Operating Procedures to the agency with instructions to reconsider including an alternative screening mechanism allowing passengers with internal physical disabilities to be screened by WTMDs, or to require that the agency provide an adequate justification for its failure to do so.

Dated: February 6, 2025

*/s/ William R. Weaver*
William R. Weaver
Haley B. Tuchman
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
202-639-6000
wweaver@jenner.com

*Counsel for Amicus Curiae*

27

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,238 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman 14-point.

Dated: February 6, 2025                          /s/ *William R. Weaver*
                                                 William R. Weaver

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the CM/ECF system. I certify that Respondents are registered CM/ECF users and that service to Respondents will be accomplished by the CM/ECF system. Service on Petitioner will be completed by emailing a copy of the same to the name and address below:

Michael Muir
muirone@yahoo.com

/s/ *William R. Weaver*
William R. Weaver

**STATUTORY ADDENDUM**

# INDEX

5 U.S.C. § 706 .................................................................................................S.A.1

29 U.S.C. § 794(a) ..........................................................................................S.A.1

49 U.S.C. § 46110 ...........................................................................................S.A.2

6 C.F.R. § 15.30(b)(4)(i) .................................................................................S.A.3

49 C.F.R. § 1540.107(d) ..................................................................................S.A.4

**5 U.S.C. § 706**

§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be--

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.


**29 U.S.C. § 794**

§ 794. Nondiscrimination under Federal grants and programs

(a) Promulgation of rules and regulations

S.A.1

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

****

## 49 U.S.C. § 46110

§ 46110. Judicial review

(a) Filing and venue.--Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title, a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (l) or (r) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

(b) Judicial procedures.--When a petition is filed under subsection (a) of this section, the clerk of the court immediately shall send a copy of the petition to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, as appropriate. The Secretary, Administrator of the

Transportation Security Administration, or Administrator of the Federal Aviation Administration shall file with the court a record of any proceeding in which the order was issued, as provided in section 2112 of title 28.

(c) Authority of court.--When the petition is sent to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration to conduct further proceedings. After reasonable notice to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists. Findings of fact by the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, if supported by substantial evidence, are conclusive.

(d) Requirement for prior objection.--In reviewing an order under this section, the court may consider an objection to an order of the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration only if the objection was made in the proceeding conducted by the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration or if there was a reasonable ground for not making the objection in the proceeding.

(e) Supreme Court review.--A decision by a court under this section may be reviewed only by the Supreme Court under section 1254 of title 28.


## 6 C.F.R. § 15.30

§ 15.30 General prohibitions against discrimination.

****

(b)(4) The Department may not, directly or through contractual or other arrangements, utilize criteria or methods of administration the purpose or effect of which would:

S.A.3

(i) Subject qualified individuals with a disability to discrimination on the basis of disability; or

(ii) Defeat or substantially impair accomplishment of the objectives of a program or activity with respect to individuals with a disability.

****

**49 C.F.R. § 1540.107**

§ 1540.107 Submission to screening and inspection.

****

(d) The screening and inspection described in paragraph (a) of this section may include the use of advanced imaging technology. Advanced imaging technology used for the screening of passengers under this section must be equipped with and employ automatic target recognition software and any other requirement TSA deems necessary to address privacy considerations.

(1) For purposes of this section, advanced imaging technology—

(i) Means a device used in the screening of passengers that creates a visual image of an individual showing the surface of the skin and revealing other objects on the body; and

(ii) May include devices using backscatter x-rays or millimeter waves and devices referred to as whole body imaging technology or body scanning machines.

(2) For purposes of this section, automatic target recognition software means software installed on an advanced imaging technology device that produces a generic image of the individual being screened that is the same as the images produced for all other screened individuals.